383 S.E.2d 509

Kenneth BLEVINS

v.

Carol Sue Blevins SHELTON.

No. 18408.

Supreme Court of Appeals of West Virginia.

July 5, 1989.

---

Sidney H. Bell, Welch, for Kenneth Blevins.

Abishi C. Cunningham, Welch, for Carol Sue Blevins.

McHUGH, Justice:

This appeal presents a narrow question of first impression for this Court to decide, specifically, whether a circuit court has the subject matter jurisdiction under the divorce statutes to modify a divorce decree by awarding rent to a former spouse who is a co-owner of the marital home which is occupied under the divorce decree by the other former spouse and one or more of their minor children, when the rent is sought solely because a new spouse is also residing in the marital home. Disagreeing with the circuit court's affirmative ruling, we reverse.

## I

In April, 1983, the appellant/plaintiff (husband) was granted a divorce from the appellee/defendant (wife) on the ground of adultery and was awarded permanent legal

custody of the three minor children. The divorce action had been brought in March, 1983. The appellant and the children were granted exclusive possession of the marital home. The divorce decree did not state that the exclusive possession of the marital home was to terminate upon the appellant's remarriage. The marital home had been built, with the help of his relatives, by the appellant, on land given by his parents to the appellant and the appellee as tenants in common. The appellee, who at all relevant times was solely a homemaker, had helped some with the home construction, by painting, wallpapering, etc.

The appellee was denied alimony based upon the finding of adultery.[1] Although served with process in the divorce case, the appellee did not answer or appear.

Over two years later the appellee, pursuant to *W. Va. Code*, 37-4-3 [1957], sought a partition sale of the former marital home, still owned by her and the appellant. Before a ruling was obtained, the appellant petitioned for an amendment of the divorce decree solely to clarify that he, the appellant, was to have possession of the former marital home only until such time as the youngest minor child reaches the age of eighteen years or otherwise becomes emancipated. Such limiting language had been omitted inadvertently from the divorce decree. Only one of the three children is a minor at the time of this appeal, and she is presently fifteen years of age.

The appellee's answer to the appellant's petition for amendment of the divorce decree alleged that the appellant had promised to purchase the appellee's undivided one-half interest in the former marital home and to make a fair and equitable distribution of the personal property, including household goods and appliances, in exchange for the appellee's promise not to contest the divorce action.[2] Alleging in her answer that the appellant had fraudulently breached his promise in this regard, the

appellee asked that the divorce case be reopened and that the divorce decree be modified; that the appellant be required to pay unto the appellee a fair price for her interest in the former marital home; and that the appellee be awarded her equitable share of the marital personal property.

After an evidentiary hearing the Circuit Court of McDowell County ("the trial court"), in October, 1986, denied the appellee's request for partition of the realty, until such time that the youngest child reaches eighteen years of age, marries or otherwise becomes emancipated; awarded to the appellee $100 per month rent prospectively because the appellant's current wife is living in the former marital home of the appellant and the appellee, still owned by both of them; awarded rent at $100.00 per month, on the same basis, retroactively for the thirty-two months during which the appellant's current wife had by that time lived in the former marital home of the appellant and the appellee, for a total of $3,200.00, to be paid within one year of that order (which would be about $266.67 per month); and scheduled a hearing on the equitable distribution of the marital personal property.

A hearing on equitable distribution of the marital personal property was never conducted, for the appellant moved to set aside the October, 1986 order insofar as it granted the retroactive and prospective rent and equitable distribution rights to the appellee. The appellant asserted that equitable distribution, based upon homemaker services, was not available here, as this divorce case was filed prior to this Court's decision in *LaRue v. LaRue*, on May 25, 1983, and no appeal preserving the issue was then pending in this Court. *See* syl. pt. 14, *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983). The appellant also asserted that the retroactive and prospective award of rent was beyond the power of the court to award and ignores the valuable

---

1. The current statutory provision barring alimony to a party found to have committed adultery is *W.Va.Code*, 48-2-15(i)(1) [1986].

2. At the subsequent evidentiary hearing on the appellant's petition for amendment, the appellant denied this *quid pro quo* allegation. In addition, the trial court later ruled that the appellee could not relitigate the grounds for the divorce, thereby implicitly finding that there had been no fraud by the appellant.

homemaker services provided by the appellant's current wife to the children. Finally, the appellant argued that the court's order ignored the substantially inequitable conduct (adultery) of the appellee upon which the divorce was granted to the appellant, which conduct should have operated in this case to bar her of any equitable interests in the former marital property.

At a subsequent evidentiary hearing on the appellant's motion to set aside the October, 1986 order, the evidence indicated that the only substantial change in circumstances from when the original divorce decree was entered was that the appellant's income had been *reduced* from that of a working coal miner to that of a totally disabled workers' compensation recipient ($1,170.00 per month).[3] The appellant testified that he could not afford to pay any amount for rent to the appellee, as he had only $20 a month above necessities.

In July, 1987, the trial court set aside that part of its October, 1986 order pertaining to equitable distribution based upon homemaker services because syllabus point 14 of *LaRue* precludes retroactive application of such principle.[4] The trial court refused to set aside, however, the portions of its previous order awarding retroactive and prospective rent to the appellee. This appeal concerns this issue of rent.

---

**3.** After the divorce decree the appellant had remarried and the appellee had remarried twice. The appellee's present husband's last name is Mullins, and she now goes by that last name.

**4.** *See also W.Va.Code,* 48–2–36 [1984]; *McComas v. McComas,* 178 W.Va. 133, 137–38 n. 2, 358 S.E.2d 217, 221 n. 2 (1987).

**5.** *Patterson* has been overruled on another point in syllabus point 6 of *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983), and has been overruled on another point in *Stillings v. Stillings,* 167 W.Va. 796, 800 n. 2, 280 S.E.2d 689, 691 n. 2 (1981).

**6.** *See also W.Va.Code,* 48–2–15(b)(4) [1986], which now explicitly codifies the *Murredu* principle:

> (4) As an incident to requiring the payment of alimony or child support, the court may grant the exclusive use and occupancy of the

## II

In syllabus point 2 of *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977), *overruled on another point, Patterson v. Patterson,* 167 W.Va. 1, 5 n. 1, 277 S.E.2d 709, 712 n. 1 (1981),[5] the Court held: "A trial court in the exercise of its sound discretion under the provisions of W.Va.Code 48–2–15, may award the exclusive use of the home property to a spouse incident to obtaining custody of the children." *Accord, Fischer v. Fischer,* 175 W.Va. 753, 755, 338 S.E.2d 233, 235 (1985); syl. pt. 4, *Rose v. Rose,* 176 W.Va. 18, 340 S.E.2d 176 (1985); *Travis v. Travis,* 172 W.Va. 372, 374, 305 S.E.2d 329, 331 (1983); *Stillings v. Stillings,* 167 W.Va. 796, 797, 280 S.E.2d 689, 690 (1981).[6]

In *Stillings,* we observed that one of the primary purposes of the exclusive possession rule is an economic reason, specifically, to enable the divorce court to utilize the family home property as the living situs for the spouse who has obtained custody of the minor children, thereby minimizing the monetary payments necessary to maintain the existing standard of shelter for the spouse and the minor children. 167 W.Va. at 801, 280 S.E.2d at 692. In *Fischer,* a more important purpose for the exclusive possession rule, a psychological reason, was set forth: it is in the best interest

---

marital home to one of the parties, together with all or a portion of the household goods, furniture and furnishings reasonably necessary for such use and occupancy. Such use and occupancy shall be for a definite period, ending at a specific time set forth in the order, subject to modification upon the petition of either party. Except in extraordinary cases supported by specific findings set forth in the order granting relief, a grant of the exclusive use and occupancy of the marital home shall be limited to those situations where such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties.

Applying this statute, this Court, in syllabus point 2 of *McKinney v. McKinney,* 175 W.Va. 640, 337 S.E.2d 9 (1985), concluded that, "[e]xcept in extraordinary cases, the right to the exclusive use and occupancy of the marital home terminates when such use and occupancy is no longer necessary to accommodate the rearing of minor children. *W.Va.Code,* 48–2–15(b)(4) [1984]."

of the minor children to avoid the traumatic effects of displacing them from their home. 175 W.Va. at 755, 338 S.E.2d at 235. This point has also been made elsewhere: "[F]amily home awards are meant to benefit minor children by providing them with a stable home environment[.]" *In re Marriage of Katz*, 201 Cal.App.3d 1029, 1037, 247 Cal.Rptr. 562, 566 (1988). *See also Martin v. Martin*, 507 So.2d 1136, 1138 (Fla.Dist.Ct.App.1987) (per curiam). Therefore, a partition sale of the marital home will ordinarily be denied in this context because it would frustrate the purposes of the exclusive possession award. *Stillings*, 167 W.Va. at 798 n. 1, 280 S.E.2d at 690 n. 1; *Murredu*, 160 W.Va. at 616, 236 S.E.2d at 457.

Similarly, an award of rent from the possessory spouse to the nonpossessory spouse would frustrate the purposes of the exclusive possession award. It would reduce the financial resources available to the possessory spouse for the support of the minor children. Nothing in the divorce statutes authorizes such an award of rent in a modification proceeding, when, as here, it is sought solely as an exaction from the possessory spouse's current spouse who is also residing in the marital home. That is, the relief requested here in the modification proceeding involved only compensation sought for the property interest of the nonpossessory spouse in the former marital home; it did not involve alimony, child custody or child support.[7]

 This Court has recently reiterated that the jurisdiction of a circuit court over the property of the parties which arises from the fact of a divorce proceeding having been brought is a pure creature of the statute. *Segal v. Beard*, 181 W.Va. 92, 380 S.E.2d 444, 449 (1989), and the cases cited there. This rule is a specific application of the general rule that circuit courts have no inherent powers in divorce cases, but, rather, purely statutory powers in such cases. *Id.*, 181 W.Va. at ——, 380 S.E.2d at 447, and the cases cited there. *W.Va.Code*, 48–2–15(e) [1984, 1986] is the statute on proceedings for modification of divorce decrees held before a circuit court.[8] Based

---

7. While an award of the exclusive possession of the marital home to accommodate the rearing of minor children is a form of child support from the nonpossessory spouse, *see, e.g., In re Marriage of Katz*, 201 Cal.App.3d 1029, 1035, 247 Cal.Rptr. 562, 565 (1988), the appellee sought rent in the modification proceeding solely to further her property interests, not to reduce her "child support" obligations. In syllabus point 1 of *Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987), this Court restated the traditional rule: "A child support order may be modified only upon a substantial change of circumstances which was uncontemplated by either of the parties at the time the order was entered and upon a showing that the benefit of the child requires such modification. *W.Va.Code*, 48–2–15(e) [1986]." The appellee did not allege, much less show, that the interests of the minor children at that time would not be prejudiced by the order concerning rent, and the trial court did not consider the effect of that order upon the minor children's support. The reason is clear: the trial court was acting upon the appellee's request for rent to promote her property interests, not for a reduction of child support.

This point is also shown by the fact that the trial court ordered retroactive rental payments, while it is well settled that a child support order may be modified only prospectively. We recognized this principle again in syllabus point 2 of *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987): "The authority of the circuit courts to modify alimony or child support awards is pro-spective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments." Again, the trial court was not concerned with this principle because it was providing the appellee "relief" related solely to her property interests, not modifying child support.

8. The language of *W.Va.Code*, 48–2–15(e) [1984, 1986] is as follows:

(e) At any time after the entry of an order pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, *revise or alter such order concerning the maintenance of the parties, or either of them,* and make a new order concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice; and the court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, *revise or alter such order concerning the custody and maintenance of the children,* and make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require. *In granting such relief,* the court may, where other means are not conveniently available, alter any prior order of the

upon this statute, we held, in syllabus point 2 of *Segal*, that "[a] circuit court lacks jurisdiction under *W.Va.Code,* 48–2–15(e) [1986] to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody." This holding was consistent with authorities elsewhere that property rights of the parties to a divorce decree may not be modified or vacated after the decree becomes final, in the absence of fraud, coercion, mistake or other grounds on which judgments in general may be modified or vacated. *Segal,* 181 W.Va. at 97, 380 S.E.2d at 449–50.

This concept has been applied also to a nonpossessory spouse's request for rent from the spouse in possession of the marital home, when the request for rent was made after the award of possession. In *Bolden v. Bolden,* 524 So.2d 10 (La.Ct.App. 1988), the court held that a spouse who is awarded the use and occupancy of the marital home by the trial court, pending judicial partition, shall not be liable to the other spouse for rent, unless the rent was ordered to be paid at the time of the award of use and occupancy. *Id.* at 12. Unlike in the State of West Virginia, a statute in Louisiana explicitly authorizes a trial court, as part of the exclusive possession award, to award rent to the nonpossessory spouse from the spouse in possession of the mari-

tal home, pending partition: "A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending the partition ... shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court." *La.Rev.Stat.Ann.* § 9:308(B) (West Supp.1989).[9]

West Virginia does have a statute, outside the divorce statutes, which provides, *inter alia,* for an accounting to and the recovery of rent by a joint tenant or a tenant in common who has not had possession of jointly owned property from another joint tenant or tenant in common who has had exclusive possession of the property. *W.Va.Code,* 55–8–13 [1931] states in relevant part: "An action of account may be maintained ... by one joint tenant [or] tenant in common ... against the other, ... for receiving more than his [or her] just share or proportion." Following a Virginia precedent, this Court early decided that this statute alters the common law and makes a joint tenant or a tenant in common who has had exclusive possession of jointly owned property accountable to the other joint tenant(s) or tenant(s) in common, whether or not the tenant in exclusive possession has denied the other tenant(s) the right to enter and whether the tenant in exclusive possession has received rent from strangers or has merely derived the bene-

court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody or necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.
(emphasis added by us)

**9.** We are aware of two statutes enacted after entry of the divorce decree in this case which touch upon the subject of rent. The equitable distribution statute now authorizes a court, as part of the original divorce decree, to "[d]irect either party to pay a sum of money to the other party in lieu of transferring specific property or an interest therein, if necessary to adjust the equities and rights of the parties, which sum may be paid in installments or otherwise, as the court may direct[.]" *W.Va.Code,* 48–2–32(d)(7)(C) [1984]. This statute does *not,* how-

ever, authorize a court, as part of the original divorce decree, to impose upon a spouse who is given exclusive possession of the marital home in order to accommodate the rearing of minor children, the obligation to pay rent to the nonpossessory spouse. Rather than being "necessary to adjust the equities," such rent would be inequitable in that the minor children's interests would be prejudiced: funds otherwise available for the care of the minor children would be diverted as rent to the nonpossessory spouse. There would be a potential for a financial burden upon the possessory spouse to the extent that the marital home would be unaffordable, resulting in displacing the minor children from their home.

Likewise, *W.Va.Code,* 48–2–15(b)(4) [1984, 1986] does not currently authorize rent as requested here. Under that statute, a court, as part of the original divorce decree, may order rent, home loan installments, utility payments, property taxes, etc., to be paid to "third parties," that is, to creditors, not to co-owners.

fits of exclusive occupation. *See* syl. pt. 1, *Ward v. Ward's Heirs,* 40 W.Va. 611, 21 S.E. 746 (1895), and 40 W.Va. at 614–15, 21 S.E. at 747–48. *See also Hatcher v. Narcise,* 180 W.Va. 20, 23, 375 S.E.2d 198, 201 (1988).

■ We believe *W.Va.Code,* 55–8–13 [1931] does not authorize rent to be awarded to a nonpossessory spouse from a spouse who has been awarded by a divorce decree the exclusive possession of the marital home to accommodate the rearing of minor children, for the spouse in exclusive possession, by virtue of the exclusive possession award itself, has not received more than his or her just share or proportion. Instead, the court ordering exclusive possession of the marital home as an incident to child custody determined necessarily that the custodial parent was *entitled* to *exclusive* occupancy of the marital home *vis-a-vis* the noncustodial parent. Consequently, no obligation for rent to the nonpossessory spouse/noncustodial parent can arise.

Underlying the appellee's request for rent are feelings of resentment, rather than concern for the minor child's welfare. With respect to the feelings of resentment, it has been said:

> While the continual presence of a third person in the residence might well have an adverse emotional impact upon a nonpossessory father [or mother], any such effect would be far outweighed by the benefits accruing to the children from occupancy of the family home. It would be unduly harsh to penalize the children for the possessory owner's personal relationship with third parties.

*In re Marriage of Escamilla,* 127 Cal. App.3d 963, 970, 179 Cal.Rptr. 842, 846 (1982). *Accord, In re Marriage of Johnson,* 134 Cal.App.3d 148, 160, 184 Cal.Rptr. 444, 450 (1982), *hearing denied* (Cal. Sept. 22, 1982). A leading commentator also recognizes this point: "The non-custodial spouse's jealousy and bitterness [are] understandable, particularly when the custodial spouse remarries and the children then live [also] with a stepparent, but [such feelings] cannot be allowed to jeopardize the future of the children." 2 H. Clark, *The Law of Domestic Relations in the United States* § 18.1, at 351 (2d ed. 1987). The emotional impact upon the nonpossessory spouse arising from the fact that a stranger is also living in the former marital home with the minor children and the possessory spouse does not support the giving of "relief" in the form of rent from the possessory spouse, as the minor children's support interests would be prejudiced by the payment of that rent.[10]

■ In any event, as discussed previously, the statutory law of this state is controlling on this issue, and it does not authorize the rent awarded by the trial court. Accordingly, a circuit court lacks jurisdiction under *W.Va.Code,* 48–2–15(e), as amended, to modify a divorce decree by awarding rent, retroactively or prospectively, to a former spouse who is a co-owner of the marital home which is occupied under the divorce decree by the other former spouse and one or more of their minor children, when the rent is sought solely because a new spouse is also residing in the marital home.

Based upon the above, the final order of the trial court is reversed insofar as it requires the payment of rent by the appellant to the appellee.

Reversed.

10. This Court is aware of the suggestion by one court that rent to the noncustodial parent from the custodial parent on behalf of the latter's new spouse would be preferable to terminating the exclusive possession award and evicting the minor children upon or shortly after the remarriage of the possessory spouse/custodial parent.

*Martin v. Martin,* 507 So.2d 1136, 1140 (Fla.Dist. Ct.App.1987) (per curiam). That suggestion was only a dictum in the case because there was no claim for rent, and the court did not address the prejudicial effect of the payment of rent upon the minor children's support interests.