448 S.E.2d 428

**STATE of West Virginia ex rel. Gretchen Lewis CHAFIN, Plaintiff Below, Petitioner,**

v.

**Honorable Robert C. HALBRITTER, Special Judge of the Circuit Court of Mingo County, and H. Truman Chafin, Defendant Below, Respondents.**

No. 22104.

Supreme Court of Appeals of West Virginia.

Submitted March 1, 1994.

Decided July 21, 1994.

Rehearing Denied Sept. 13, 1994.

742

Robin Jean Davis, Segal & Davis, Charleston, for Gretchen Lewis Chafin.

1. Mingo County Circuit Judge Elliot Maynard voluntarily recused himself from presiding in this case. Judge Robert C. Halbritter and Family Law Master Diana L. Johnson were appointed to oversee the case. In response to the voluntary

Parrish McKittrick, McKittrick & Tatlinger, St. Albans, for H. Truman Chafin.

WORKMAN, Justice:

Petitioner, Gretchen Lewis Chafin, seeks a writ of prohibition preventing enforcement of a temporary order entered by the Circuit Court of Mingo County, which granted to her exclusive use and occupancy of a Williamson residence during the pendency of divorce proceedings. The Respondents are the Petitioner's husband, H. Truman Chafin, and Judge Robert C. Halbritter, appointed as special judge for the proceeding below.[1] After considering the merits of the petition, we grant the requested writ of prohibition.

On October 19, 1993, Petitioner filed a complaint in the circuit court seeking a divorce from Respondent Chafin. On December 16, 1993, Family Law Master Diana L. Johnson entered a temporary order, which awarded temporary custody of the parties' then twenty-two-month-old daughter to Petitioner and established a visitation schedule for Respondent Chafin. The order also scheduled a hearing for January 3, 1994.

Before the January 3, 1994, hearing was held, both parties filed motions seeking temporary relief pursuant to West Virginia Code § 48–2–13 (Supp.1993). In their respective motions, each party requested exclusive use and possession of a residence located in Charleston, West Virginia. Respondent Chafin also requested exclusive use and possession of a residence located in Williamson, West Virginia.

At the hearing before the family law master on January 3, 1994, both parties argued for use and possession of the Charleston residence. As grounds for her request, Petitioner stated that: (1) she and the infant child had resided in Charleston continuously for the preceding eight months; (2) the child's babysitter, pediatrician, and ear, nose, and throat specialist are all located in Charleston; and (3) it was impractical for

disqualification of Chief Justice William T. Brotherton, we recalled the Honorable James O. Holliday to preside. Justice Richard Neely later recused himself from the case.

Petitioner to reside in Williamson[2] because of her employment[3] in Charleston.

In support of his claim of entitlement to the Charleston residence, Respondent Chafin contended that the residence was separate property and not properly the subject of a temporary divorce order.[4] Additionally, he argued that, as a State Senator from Mingo County, he would be serving in the West Virginia Legislature beginning on January 12, 1994, and wished to reside in the Charleston residence during the session.

By letter dated January 6, 1994, the family law master awarded Respondent Chafin exclusive use and possession of the Charleston residence, and Petitioner was awarded exclusive use and possession of the Williamson residence. Petitioner challenged this ruling by petitioning the circuit court for a writ of prohibition.[5] By order dated January 21, 1994, Judge Halbritter denied Petitioner's verified petition for writ of prohibition on the grounds that an appeal of the final order of divorce would provide an adequate remedy. Petitioner then filed a petition seeking a writ of prohibition from this Court.

\* \* \*

■ As an initial matter, we first resolve whether the remedy of prohibition is appropriate in this case. Although the circuit court deemed an appeal of the final order of divorce to be an adequate remedy in this

case, we disagree.[6] As this case illustrates, a petition for appeal will not always provide an effective remedy to a party who has been subjected to an improper temporary relief order entered pursuant to West Virginia Code § 48–2–13.

To order the infant child and her custodian to vacate the home in which they are living and to move to another town hours away from the infant's babysitter and medical providers, as well as the mother's place of employment, appears both improvident and unnecessary at this stage of the litigation. This appears especially true in view of preliminary evidence which indicates that Respondent Chafin is in a superior financial position as compared to Petitioner. Additionally, this case gives every indication that extensive evidentiary hearings may be necessary to resolve a number of difficult legal and factual issues in the underlying proceeding. Accordingly, if the issue of temporary residence were to be resolved through the appeals process, the length of such proceedings alone would render them inadequate as a matter of law with regard to the immediate issue of where the parties can reside during the pendency of the proceedings.

■ As this Court has previously recognized, prohibition may be substituted for a writ of error or appeal when the latter alter-

2. Petitioner also argued that she had no means of making a living in Williamson because she has been precluded by Respondent Chafin from practicing law at the firm formerly known as Chafin & Lewis, where she previously practiced.

3. On January 5, 1994, Petitioner was appointed by Governor Gaston Caperton as Secretary of the West Virginia Department of Health and Human Resources. As such, Petitioner's place of employment is Charleston, West Virginia. This factual development was communicated to the family law master by facsimile on January 6, 1994, for her consideration.

4. In response to Respondent Chafin's separate property contention, Petitioner argued that although Respondent Chafin bought the residence before their marriage, they were living together at the time of purchase and, subsequently married and had a child together. *See Goode v. Goode*, 183 W.Va. 468, 396 S.E.2d 430 (1990) (discussing court-ordered division of property acquired through common-law marriage). Moreover, although Respondent Chafin bought the

Charleston residence before the parties' marriage, Petitioner was named grantee on the deed. Petitioner later conveyed her interest in the property to Respondent Chafin, but contends such conveyance was obtained through fraud. We do not address this issue of alleged fraud as it does not impact upon our decision in this case.

5. Given that West Virginia Code § 48–2–13(g) provides that:

"[n]o order granting temporary relief may be the subject of an appeal or a petition for review[,]" prohibition was the only method of challenging the circuit court's denial of requested relief at this juncture.

6. In addition to exclusive use and possession of the Charleston home, Petitioner also sought prohibition against the family law master's rulings on temporary alimony, child support, and payment of court costs and attorney's fees. We need not address these issues in this decision since they can be effectively resolved through appeal of any final divorce order.

natives would provide an inadequate remedy. *See State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 41, 277 S.E.2d 718, 722 (1981); *Hinkle v. Black,* 164 W.Va. 112, 118, 262 S.E.2d 744, 748 (1979). Furthermore, we held that, "[a] definite rule cannot be established to determine in advance whether a remedy by appeal fully meets the requirements of justice in a particular case, and the adequacy of such remedy in any given case is to be determined in light of all the facts and circumstances." *Woodall v. Laurita,* 156 W.Va. 707, 712, 195 S.E.2d 717, 720 (1973). In addition, we have recognized that "[o]ur modern practice, is to allow the use of prohibition, based on the particular facts of the case, where a remedy by appeal is unavailable or inadequate, or where irremediable prejudice may result from lack of an adequate interlocutory review." *McFoy v. Amerigas, Inc.,* 170 W.Va. 526, 532, 295 S.E.2d 16, 22 (1982).

■ The issue of the residency needs of Petitioner presents a unique issue, which is, under the facts of this case, not one that can wait for the completion of the appeals process for resolution, especially in light of the child's existence. By the time an appeal can be had of the final recommended decision of the family law master, the issue of the temporary use and occupancy of the Charleston residence will have become moot as the issue will then either be one of permanent use and occupancy or a sale of the home.[7] Accordingly, we find prohibition to be the only remedy which can effectively address the current living arrangement concerns raised by Petitioner in a timely fashion. Therefore, we conclude that where the circumstances of the parties are such that, seeking relief through appeal of the final order of divorce would provide an inadequate remedy, a temporary order may be challenged through a writ of prohibition.

■ Respondent Chafin argues that the Charleston residence is not marital property and, thus, is not subject to an award of temporary relief.[8] West Virginia Code § 48–2–13 empowers a court to award, among other things, "exclusive use and occupancy of the marital home to one of the parties during the pendency of the action." W.Va.Code § 48–2–13(a)(8).[9] Respondent contends that,

7. By way of analogy, in *State ex rel. Strickland v. Daniels,* 173 W.Va. 576, 318 S.E.2d 627 (1984), a landlord sued for possession of a tenant's apartment in magistrate court, alleging that the tenant's guests had on one occasion disturbed other tenants, a violation of one of the guidelines in the lease agreement. The tenant counterclaimed for invasion of privacy and intentional infliction of emotional distress, and attempted to remove the entire case to the Circuit Court of Wyoming County. *Id.* at 579, 318 S.E.2d at 630. The magistrate removed the tenant's tort action to the circuit court but refused to remove the eviction action. *Id.* The tenant then petitioned this Court for a Writ of Prohibition, seeking to prevent enforcement of the magistrate's interlocutory order. *Id.*

In deciding that prohibition was an appropriate remedy, we considered the criteria for granting prohibitory relief previously promulgated in Syllabus Point 1 of *Hinkle,* 164 W.Va. 112, 262 S.E.2d 744, which reads:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common

law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

We ruled in *Strickland* that the tenant was not adequately protected by the right to appeal "because she [tenant] could well be evicted before the appeal is fully heard." *Strickland,* 173 W.Va. at 580, 318 S.E.2d at 631; *see also Criss v. Salvation Army Residences,* 173 W.Va. 634, 640, 319 S.E.2d 403, 409 (1984) ("[t]he petitioners in the case before us are not fully protected by the right to appeal because they could be evicted before the appeal is heard"). After finding that prohibition would also save the parties time and money, we held prohibition to be an appropriate remedy. *Strickland,* 173 W.Va. at 580, 318 S.E.2d at 631.

8. Family Law Master Johnson made no finding with regard to the Charleston residence's status as separate or marital property. We also decline to classify the residence, not only because such classification would be premature, but also because it is not relevant to our limited review of this case at this time.

9. West Virginia Code § 48–2–13 provides, in pertinent part:

(a) At the time of the filing of the complaint or at any time after the commencement of an

by using the term "marital home," the legislature intended family law masters to determine whether a residence is classified as marital property before its use can be awarded as temporary relief. We disagree.

■ West Virginia Code § 48–2–13 neither expressly nor impliedly requires the determination of whether a residence is marital property before it may be awarded pursuant to a temporary order. As used in the statute, the term "marital home" is not synonymous with the term "marital property." The terms "marital property" and "separate property" are both defined by West Virginia Code § 48–2–1 (Supp.1993). *Id.* at § 48–2–1(e), (f). Although the definition of marital property includes some types of real property, "marital home" is not specifically included as a term in the definition. Thus, the statute permits a temporary award of the marital home without regard to its status as marital or separate property. By their very nature, temporary issues are in need of expeditious resolution. To require resolution of the substantial issue of whether the residence is separate or marital property at the temporary hearing would defeat the purpose of the temporary proceedings. The statute avoids this problem by referring only to the marital home in terms of residency, and not ownership. *See* W.Va.Code § 48–2–13.

In several cases, this Court has previously differentiated between the terms "marital home" and "marital property." *See Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991) (upholding classification of jointly titled house as marital property); *see also Koontz v. Koontz,* 183 W.Va. 477, 483, 396 S.E.2d 439, 445 (1990) ("a joint note and a joint mortgage for the marital home can indicate the spouses' intent to consider the marital home as marital property"). In determining whether the subject marital homes constituted marital property, these decisions necessarily assume the existence of situations in which a marital home may not qualify as marital property. Accordingly, we must conclude that the terms "marital property" and "marital home" are not synonymous. Moreover, because the statute is clear that the subject of the award is the marital residence, and the parties do not dispute that they resided together in the Charleston residence, it was properly the subject of such an award.

■ This Court has long recognized the authority of a circuit court to award exclusive use and possession of a marital residence incident to an award of child custody. In syllabus point two of *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977), *overruled on another point by Patterson v. Patterson,* 167 W.Va. 1, 5, 277 S.E.2d 709, 712 n. 1 (1981), we held that: "A trial court in the exercise of its sound discretion under the provisions of W.Va.Code, 48–2–15, may award the exclusive use of the home property to a spouse incident to obtaining custody of the children." *Accord, Blevins v. Shelton,* 181 W.Va. 544, 547, 383 S.E.2d 509, 512

---

action for divorce, annulment or separate maintenance under the provisions of this article and upon motion for temporary relief, notice of hearing and hearing, the court may order all or any portion of the following temporary relief, which order shall govern the marital rights and obligations of the parties during the pendency of the action:

.    .    .    .    .

(8) The court may grant the exclusive use and occupancy of the marital home to one of the parties during the pendency of the action, together with all or a portion of the household goods, furniture and furnishings, reasonably necessary for such use and occupancy. The court may require payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes and insurance coverage.

When such third payments are ordered, the court shall specify whether such payments or portions of payments are temporary alimony, temporary child support, a partial distribution of marital property or an allocation of marital debt: Provided, That if the court does not set forth in the order that a portion of such payments is to be deemed temporary child support, then all such payments made pursuant to this subdivision shall be deemed to be temporary alimony: Provided, however, That the court may order such payments to be made without denominating them either as temporary alimony or temporary child support, reserving such decision until such time as the court determines the interests of the parties in marital property and equitably divides the same. . . .

(1989); *see* W.Va.Code § 48–2–15(b)(5) (1992).

■ It is axiomatic that each spouse has a property interest in any residence that is classified as marital property. Thus, when a circuit court awards exclusive use and possession of such marital property to the custodial parent, the custodial parent is being awarded exclusive use and possession of the other parent's property interest in the residence. Typically, these awards are "temporary" in that the custodial parent has exclusive use and possession of the marital residence only until the parties' children become emancipated. *See* Syl. Pt. 2, *McKinney v. McKinney,* 175 W.Va. 640, 642–43, 337 S.E.2d 9, 11 (1985). The award to the custodial parent of the other parent's property interest stems from the noncustodial parent's obligation to support his or her children. *See Blevins,* 181 W.Va. at 544, 383 S.E.2d at 512 n. 6 (recognizing that the right to exclusive use of the marital home ends when it is no longer 'necessary to accommodate the rearing of minor children') (citing Syl. Pt. 2, *McKinney,* [175] W.Va. [at 642–43], 337 S.E.2d [at 11] ).

■ The status of a residence as marital or separate property is only relevant with regard to its disposition in the final divorce order. The statutes do not require, nor is there any reason to require, that a determination be made as to whether a marital residence is separate or marital property at the time when a temporary order providing for use and occupancy of a residence is made. In many cases, such a determination could require lengthy evidentiary hearings not contemplated by the mechanism for temporary relief. Accordingly, exclusive use of a marital residence may be awarded to the custodial parent in a temporary relief order entered in a divorce proceeding as an incident to child custody regardless of the home's status as separate or marital property.

■ Temporary orders should be fashioned with the objectives of fostering stability in the lives of the parties and the children, if any, and temporarily allocating financial resources to divorcing parties so as to maintain the status quo to the degree possible pending resolution of the underlying divorce proceeding. These goals are clearly not realized through the temporary order entered below. The location and demands of Petitioner's employment require her to reside in or near Charleston. The child's babysitter resides in Charleston, and her medical providers similarly practice in Charleston. As a State Senator, Respondent Chafin must maintain a residence in Mingo County to satisfy constitutional requirements. *See* W.Va. Const. art. VI, § 12.[10] Additionally, Respondent Chafin has a successful law practice in Williamson which presumably requires a residence in that locale. Given these undisputed facts, the family law master's temporary order, insofar as it awards Respondent Chafin the Charleston residence and Petitioner the Williamson residence, is illogical both from a logistical standpoint and from the standpoint of fostering stability in the lives of the parties and especially the life of the child. Moreover, given that the Charleston home has been the child's home for a substantial portion of her life and her most recent home, coupled with Petitioner's employment in Charleston and the fact that Respondent Chafin's need for a Charleston residence is limited to the relatively short duration of the legislative session, the awarding of the Charleston residence to Respondent Chafin just doesn't make sense. Family law masters must not lose sight of the purpose of temporary orders, that being the placement of parties in a fair and livable situation pending resolution of the larger issues between them.

Based on the foregoing, we conclude that the family law master erred in failing to award Petitioner temporary use and possession of the parties' marital residence in

---

**10.** Section 12 provides:

No person shall be a senator or delegate who has not for one year next preceding his election, been a resident within the district or county from which he is elected; and if a senator or delegate remove from the district or county for which he was elected, his seat shall be thereby vacated.

W.Va. Const. art. VI, § 12.

Charleston. Accordingly, we grant the requested writ of prohibition and direct the Circuit Court of Mingo County to enter a temporary order awarding exclusive use and possession of the Charleston residence to the Petitioner and the infant child of the parties and exclusive use and occupancy of the Williamson residence to Respondent Chafin pending final resolution of the parties' divorce.

Writ granted.

HOLLIDAY, Special Justice, respectfully dissents.